1

1IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

Greg N. Ouellette
Plaintiff

v.

Maine Department of Corrections
Defendant

**Complaint for a Civil Case**

Civil No. ____________________________
*(to be filled in by the Clerk's Office)*

Jury Trial: ☒ Yes ☐ No
*(check one)*

# I. The Parties to This Complaint

## A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Greg N. Ouellette |
| Street Address | 119 Market Street |
| City and County | Fort Kent, Aroostook County |
| State and Zip Code | ME 04743 |
| Telephone Number | 207-231-0340 |
| E-mail Address | greg.ouellette.67@gmail.com |

## B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Maine Department of Corrections |
| Public entity | State of Maine agency |
| Street Address | 25 Tyson Drive, 3rd Floor |
| City and County | Augusta, Kennebec County |
| State and Zip Code | ME 04333-0111 |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |

Telephone Number ______________________

E-mail Address (if known) ______________________

Defendant No. 3

Name ______________________

Job or Title (if known) ______________________

Street Address ______________________

City and County ______________________

State and Zip Code ______________________

Telephone Number ______________________

E-mail Address (if known) ______________________

Defendant No. 4

Name ______________________

Job or Title (if known) ______________________

Street Address ______________________

City and County ______________________

State and Zip Code ______________________

Telephone Number ______________________

E-mail Address (if known) ______________________

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A. If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134.

Federal question jurisdiction under 28 U.S.C. § 1331.

______________________________________________________________

**B. If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

a. If the plaintiff is an individual

The plaintiff, *(name)* ________________________, is a citizen of the State of *(name)* ________________________.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

a. If the defendant is an individual

The defendant, *(name)* ________________________, is a citizen of the State of *(name)* ________________________. *Or* is a citizen of *(foreign nation)* ________________________.

b. If the defendant is a corporation

The defendant, *(name)* ________________________, is incorporated under the laws of the State of *(name)* ________________________, and has its principal place of business in the State of *(name)* ________________________. *Or* is incorporated under the laws of *(foreign nation)* ________________________, and has its principal place of business in *(name)* ________________________.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

______________________________________________________________

______________________________________________________________

______________________________________________________________

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Maine DOC allegedly failed to provide disability-related help I needed to apply for and participate in SCCP review. I asked for help and raised the issue through a disability grievance. I allege that the assistance DOC provided did not give me meaningful access to the application and review process. The attached ADA Title II Statement sets out the requests, responses, and effects in detail.

## IV. Relief Requested

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I request compensatory damages in an amount supported by the evidence and permitted by law, recoverable costs and attorney fees where authorized, and any other lawful relief supported by the claim. I demand a jury trial on issues triable to a jury.

## V. Closing

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 11/3, 2026

Signature of Plaintiff [signature]

Printed Name of Plaintiff Greg N. Ouellette

## ADA Title II Statement

I. PARTIES AND JURISDICTION

1. Plaintiff Greg N. Ouellette resides in Fort Kent, Maine. He entered Maine Department of Corrections custody on March 19, 2025, was held at Maine Correctional Center, Maine State Prison (MSP), and Mountain View Correctional Facility (MVCF), and was released from DOC incarceration on March 25, 2026.

2. Defendant Maine Department of Corrections (DOC) is a public entity of the State of Maine. DOC administers the Supervised Community Confinement Program (SCCP), including application assistance, planning, review, community investigation, and administrative appeals.

3. This action arises under Title II of the Americans with Disabilities Act, 42 U.S.C. §§12131-12134. This Court has jurisdiction under 28 U.S.C. §1331. Venue is proper under 28 U.S.C. §1391 because the events occurred in Maine.

4. Plaintiff challenges access to SCCP planning and application services because of disability. He does not claim an unconditional entitlement to community placement and does not seek reversal of a conviction, recalculation of a sentence, termination of probation, or release from custody in this action.

II. DISABILITY AND REQUESTED ASSISTANCE

5. Plaintiff has generalized anxiety disorder, ADHD, and depressive disorder. FRRH's April 14, 2026 counseling note by Douglas Levesque, LCSW, records that, after consultation with medication manager Matthew Wilson, both agreed Plaintiff presented with PTSD. The note discusses trauma Plaintiff reported from incarceration. This documents a post-release clinical assessment; it does not establish that a particular SCCP act caused PTSD or that SCCP reviewers knew of that later assessment. His symptoms include anxiety, rumination, and racing or looping thoughts. He alleges that these impairments substantially limited concentrating, thinking, and communicating under stress, including understanding complicated correctional paperwork and advocating for himself. Anxiety made follow-up difficult even though he continued submitting requests, grievances, and letters.

6. During 2025, Plaintiff repeatedly sought practical assistance with SCCP while describing these difficulties. His June 6 healthcare slip requested counseling, described depression, and said he was pursuing SCCP and could use help; its response section records correspondence sent June 10. Separately, Danielle Hunt recorded a June 10 office discussion of SCCP, his desire to understand the process, a programming waiver, and class timing. The help sought included identifying the responsible official, sitting with a knowledgeable person to review the application and explain the process, addressing disability information missing from his records, and following up on the application.

7. On August 3, 2025, Plaintiff signed a mental-health request asking for SCCP contact information and mental-health assistance, naming depression, anxiety and social anxiety and writing that it seemed like PTSD. That wording was his symptom report, not a formal diagnosis. An August 6 response scheduled an August 13 appointment. At that visit, Spencer Desimone recorded worsening depressive symptoms, rumination, and frustration waiting for DOC paperwork. Counseling occurred.

8. In a handwritten letter addressed to Spencer during the same general period, Plaintiff described anxiety, depression, social anxiety, and racing or looping thoughts. He said he was applying for SCCP, was not receiving help reviewing the paperwork, and needed someone to help him. He requested contact with the responsible reentry official and correction of records that omitted his disability. The precise submission date and routing of this letter are not established.

9. On August 25, Dr. John Alexander evaluated Plaintiff after chest pain and a reported stressful SCCP meeting and panic-type episode. On August 27, Desimone documented Plaintiff's report of an anxiety attack associated with caseworker interactions and SCCP paperwork, increasing stress over administrative requirements, and difficulty understanding DOC processes. Plaintiff received medical and behavioral-health care; he does not allege an absence of all treatment.

10. Plaintiff signed grievance 2025-MSP-1132 on September 5, 2025; DOC received it September 8. He requested someone to go over SCCP paperwork and classification, stated that his disability was not listed, alleged discrimination, and referred to unanswered requests concerning a programming exception.

11. The September 10 grievance response stated that Plaintiff was working with classification and his caseworker on a release plan. The form is marked resolved and bears Plaintiff's signature. Plaintiff disputes that the response resolved the disability concerns: its text does not explain whether disability information was corrected or how the requested individualized help was assessed and provided.

12. On September 22, Plaintiff signed another request asking to sit and talk about SCCP and referring to contact between his caseworker and the Institutional Probation Officer (IPO). A September 24 nursing contact is recorded. Plaintiff contends that referral to ordinary casework and healthcare contacts did not adequately address the disability-related difficulty reviewing, understanding, correcting, and following up on his SCCP paperwork.

III. FIRST APPLICATION AND REPLACEMENT PROCESS

13. Plaintiff retains a copy of his first SCCP paperwork bearing an August 20, 2025 signature. He has recalled August 24 as submission, but does not represent either date as independently established agency receipt of a complete packet.

14. DOC records and David Simpson's April 17, 2026 email identify unit-team approval of a programming waiver on September 17, 2025. This was not final SCCP approval.

15. On September 23, 2025, Thomas Howland recorded forwarding the first application to IPO David Cyr. A September 30 telephone interview is documented, and Cyr recorded seeing no major preliminary concerns with the plan. Plaintiff acknowledges this assistance; the preliminary assessment was not final approval.

16. On October 21, Howland described the application as pending. Plaintiff transferred from MSP to MVCF on October 22. Moulton's October 31 response to Plaintiff said the application had not been received and that she had contacted the prior caseworker and Cyr. Her November 10 response described further inquiries without news and proposed escalation.

17. Archer's November 12 and November 14 entries record inability to establish the first application's status or locate the MSP plan. The produced records do not identify the original packet's last custodian, complete routing, or disposition. Plaintiff does not allege intentional destruction by Cyr or another identified person.

18. Plaintiff had to work through a replacement application at MVCF. On November 12, Archer reviewed the case plan, explained SAFE programming, printed replacement SCCP paperwork, and supplied benefits-related forms. On November 14, Archer reviewed and witnessed SCCP forms. Plaintiff signed an acknowledgment that conditions had been read or read to him and explained.

19. June Allen recorded a November 19 recommendation to proceed. Moulton recorded submitting the replacement application for consideration and investigation on November 26. The November 14 signing and November 26 submission were separate events.

20. Plaintiff reports that no IPO participated in a new initial planning meeting for the replacement application. The June 22, 2026 CSYS report reviewed by Plaintiff does not document such a meeting. Plaintiff does not know whether DOC treated the earlier Cyr interview as sufficient, relied on a delegate, or maintained a separate meeting record.
21. Policy 27.2 Procedure C.4-5 describes a planning meeting with the resident, case manager, and IPO to explain eligibility, the process, and conditions. Plaintiff identifies the missing planning step as relevant to his requests for individualized explanation and review, rather than as a separate federal claim for violation of state policy.
22. On December 17, Adam Pinette conducted community screening. On December 18, Archer forwarded requested bank information. Plaintiff acknowledges this assistance and distinguishes the later community investigation from the initial planning meeting he says did not occur.
23. Grievance 2025-MVCF-335 was received November 25 and dismissed December 4 as untimely. The response states that the concerns were forwarded to an appropriate entity outside the grievance process. Plaintiff has not received an accounting identifying the recipient or outcome; he does not characterize that form as no response at all.

IV. DENIAL AND APPEAL

24. The agency-produced replacement plan identifies Plaintiff as disabled and self-employed; lists vocational rehabilitation and Ticket to Work resources; and names Fish River Rural Health, Douglas Levesque, CBT, and another treatment contact. It also discloses stopped SSDI, reapplication, and mortgage arrears. Plaintiff does not assert that listing these resources established confirmed appointments, sufficient funding, or satisfaction of every SCCP requirement.
25. A January 27, 2026 counseling letter, recorded as supplied to Plaintiff January 29, describes weekly participation beginning November 18, 2025 and no missed appointments. January 29 medical entries describe intended community follow-up and an expectation of SCCP release the following week. That expectation was not an approval by DOC. Plaintiff does not know when or whether SCCP decision-makers received these particular clinical records. The January 29 physical assessment also records that he preferred to discuss medication concerns with psychiatry after release and did not then want a mental-health discussion inside. A later letter scanned February 10 requests therapy and help preparing for release; the February 10 response places him on an individual-therapy waiting list and refers medication concerns to psychiatry. These records concern different times and potentially different services; Plaintiff does not allege he received no counseling.
26. Moulton's January 29 entry records discussing denial and appeal instructions. The denial letter is dated January 30. It cites housing, employment/income, lack of effort or a plan for community mental or physical health, likelihood of successful completion, and extreme negative community sentiment. Plaintiff disputes the health-planning characterization in light of the resources listed in the plan and the treatment records; he does not allege that community sentiment was the only reason.
27. Plaintiff signed an appeal January 30 identifying his mental-health disability, SSDI, and treatment and reentry plans. A February 2 letter by Susan Stuart states that Annabelle Schierman diagnosed recurrent moderate major depressive disorder on July 3, 2025 and that Plaintiff was receiving treatment. The letter itself was created after the initial denial. Archer recorded sending vocational-rehabilitation paperwork and diagnostic information February 3.
28. On March 6, Anthony Cantillo affirmed denial. Plaintiff did not win the SCCP administrative appeal. He lacks the complete appeal receipt, consultation, review, and delivery record. His

separate successful August 2025 Law Court appeal concerning a PFA extension did not itself vacate his convictions or direct release.

V. COUNT I - ADA TITLE II

29. Plaintiff incorporates paragraphs 1-28. He alleges that he was a qualified individual with a disability seeking meaningful access to the SCCP application and planning services DOC offered and actually provided to him, distinct from entitlement to ultimate approval.

30. Because of the limitations described above, Plaintiff needed individualized, understandable review of his SCCP paperwork, explanation of deficiencies and how to address them, accurate treatment of his reported disability information, and help navigating follow-up. His requests and express disability grievance gave DOC notice of the claimed need for that assistance.

31. Plaintiff alleges that the response referring him to ordinary classification and casework did not adequately supply the disability-related review and explanation he requested. He acknowledges Cyr's interview, Archer's assistance, explained conditions, team processing, medical care, community screening, and document forwarding. His allegation concerns the adequacy of that assistance for the communicated disability-related need.

32. Plaintiff alleges that inadequate individualized navigation assistance, compounded by the unaccounted-for first application and repeated application process, impaired his meaningful participation in SCCP planning and review. The asserted injury is the impaired opportunity to understand, correct, and support his plan through accessible planning services. Plaintiff does not allege a particular omitted document that the available evidence cannot identify or presume that a different process would necessarily have resulted in release.

33. Plaintiff alleges that DOC failed to make reasonable modifications necessary to avoid disability discrimination in that process, in violation of 42 U.S.C. §12132. He relies on the express grievance and repeated requests as notice, rather than assuming every official read his medical chart. He seeks a determination based on what the responsible personnel actually knew and did.

## VI. INJURY AND REQUEST FOR RELIEF

34. Plaintiff reports distress, anxiety, and depressive symptoms associated with navigating the SCCP process, documented in the August encounters. After release, an April 20, 2026 email preserved in CSYS informed probation of anxiety, depression, ADHD and PTSD and treatment; a May 19 entry records a counselor call about regular treatment attendance, medication improvement and incarceration-related trauma. Those later entries do not establish prior SCCP reviewer knowledge. He also reports financial, housing, and vocational hardship. He seeks compensation only for injury shown to have been caused by actionable disability discrimination and for which compensation is legally available; he does not attribute every consequence of incarceration or probation to SCCP handling.

35. Plaintiff requests compensatory damages in an amount established by the evidence to the extent permitted by applicable intent, sovereign-immunity, and remedies standards; recoverable costs and attorney fees where authorized; and other relief lawfully available on the proved claim. He does not request punitive damages against DOC or an order guaranteeing SCCP placement. He demands a jury on issues triable to a jury.